United States District Court
Southern District of Texas

**ENTERED**

February 06, 2025

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL LEE MONTGOMERY, | § | |
| TDCJ #01028676, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-24-2951 |
| ERIC GUERRERO,[1] Director, | § | |
| Texas Department of Criminal | § | |
| Justice – Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Michael Lee Montgomery (TDCJ #01028676) has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody under 28 U.S.C. § 2254 ("Petition") (Docket Entry No. 1) challenging seven convictions entered against him in Harris County, Texas. Respondent has filed a Preliminary Answer with Brief in Support ("Respondent's Answer") (Docket Entry No. 15), arguing that the Petition is barred by the governing one-year statute of limitations. Montgomery has filed a response titled "Motion for Rule Sixty 60(B) Fraud and Concealment Perpetrated Upon the Courts, Jurisdiction Subject Matter, Tolls Statute of Limitation"

---

[1]Bobby Lumpkin was the previously named respondent in this action. Eric Guerrero has succeeded Lumpkin as Director of the Texas Department of Criminal Justice – Correctional Institutions Division. Under Rule 25(d) of the Federal Rules of Civil Procedure, Guerrero is automatically substituted as a party.

("Petitioner's Response") (Docket Entry No. 16).[2]    After considering the pleadings, the state court records, and the applicable law, the court will dismiss this action for the reasons explained below.

## I.  Background

### A.    State Murder Conviction

Montgomery challenges his capital murder conviction.    On direct appeal the intermediate state court of appeals summarized the relevant facts as follows:

> On the night of December 27, 1999, [Montgomery], who was 14 years old, and his friends Juan Perez, Miguel Juarez, Miguel's brother Felipe Juarez, and Felipe's wife Marissa Juarez gathered at the home of Miguel and Felipe.  Around 9:00 p.m., they left the residence to go cruising in two cars with Juan, Miguel, and [Montgomery] in the first car and Felipe and Marissa in the second car.  Miguel carried a gun but gave it to [Montgomery] sometime during the drive.  The occupants of the first car spotted another car they wished to car jack and told the driver Juan to follow it.  The car was driven by Rosa Martinez.  They followed Rosa into the parking lot of her apartment, and Miguel and [Montgomery] went to the driver's side of her car.  Miguel tried to take the keys from her, and they struggled as she sat in the driver's seat.  [Montgomery] then shot Rosa, and the bullet entered through her shoulder and went into her chest.  She was later pronounced dead at the hospital.  Rosa was nine months pregnant at the time of her death.

---

[2]Although Montgomery has titled this filing "Motion for Rule Sixty 60(B) Fraud and Concealment Perpetrated Upon the Courts, Jurisdiction Subject Matter, Tolls Statute of Limitation," review of the filing reveals that it is a response to Respondent's Answer.

<u>Montgomery v. State</u>, No. 07-00-0574-CR, 2002 WL 31778661, at *1 (Tex. App.—Amarillo, Dec. 12, 2002).

In July of 2000 a Harris County grand jury returned an indictment against Montgomery in Cause No. 845063, charging him with capital murder.[3]  A jury in the 230th District Court for Harris County found Montgomery guilty as charged and sentenced him to life in prison.[4]  The capital murder conviction was affirmed on direct appeal on December 12, 2002.[5]  The Texas Court of Criminal Appeals refused Montgomery's petition for discretionary review ("PDR") on September 3, 2003.[6]

On August 29, 2023, Montgomery filed a state habeas application challenging his capital murder conviction.[7]  On December 13, 2023, the Texas Court of Criminal Appeals denied the state habeas application without written order on the findings of the trial court and the court's independent review of the record.[8] On January 11, 2024, Montgomery filed a Motion for Rehearing and

---

[3]<u>See</u> Indictment, Docket Entry No. 14-1, p. 7.  For purposes of identification, all page numbers refer to the pagination imprinted by the courts Electronic Case Filing system.

[4]<u>See</u> Jury Verdict Form and Judgment on Plea Before Jury Court/Jury Assessing Punishment, Docket Entry No. 14-1, pp. 137-38.

[5]<u>See</u> Docket Entry No. 14-12; <u>Montgomery v. State,</u> No. 07-00-0574-CR, 2002 WL 31778661 (Tex. App.—Amarillo, Dec. 12, 2002).

[6]<u>See</u> Docket Entry No. 14-18.

[7]<u>See</u> In the Court of Criminal Appeals of Texas Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under Code of Criminal Procedure Article 11.07, Docket Entry No. 14-36, p. 20.

[8]<u>See</u> Docket Entry No. 14-37.

Petition for Discretionary Review, which the Texas Court of Criminal Appeals dismissed per curiam on January 25, 2024.[9]

## B.    State Aggravated Robbery Convictions

Montgomery also challenges his convictions for aggravated robbery. On July 26, 2000, a Harris County grand jury returned indictments against Montgomery in Cause Nos. 845064, 845065, 845066, 845067, 845068, and 845069, charging him with six counts of aggravated robbery.[10] Montgomery pleaded guilty to all six charges.[11] On February 19, 2001, the court sentenced Montgomery to fifty years in prison as to each charge, to run concurrently.[12] The state appeals court affirmed the six convictions for aggravated

---

[9]See Docket Entry No. 14-40, p. 3.

[10]See Indictment for Cause No. 845064, Docket Entry No. 14-24, p. 5; Indictment for Cause No. 845065, Docket Entry No. 14-25, p. 5; Indictment for Cause No. 845066, Docket Entry No. 14-23, p. 5; Indictment for Cause No. 845067, Docket Entry No. 14-22, p. 5; Indictment for Cause No. 845068, Docket Entry No. 14-21, p. 5; Indictment for Cause No. 845069, Docket Entry No. 14-20, p. 5.

[11]See Judgment of Plea of Guilty/Nolo Contendere/Not Guilty Before Court - Waiver of Jury Trial for Cause No. 845064, Docket Entry No. 14-24, p. 30; Judgment of Plea of Guilty/Nolo Contendere/Not Guilty Before Court — Waiver of Jury Trial for Cause No. 845065, Docket Entry No. 14-25, p. 27; Judgment of Plea of Guilty/Nolo Contendere/Not Guilty Before Court - Waiver of Jury Trial for Cause No. 845066, Docket Entry No. 14-23, p. 28; Judgment of Plea of Guilty/Nolo Contendere/Not Guilty Before Court - Waiver of Jury Trial for Cause No. 845067, Docket Entry No. 14-22, p. 27; Judgment of Plea of Guilty/Nolo Contendere/Not Guilty Before Court - Waiver of Jury Trial for Cause No. 845068, Docket Entry No. 14-21, p. 27; Judgment of Plea of Guilty/Nolo Contendere/Not Guilty Before Court - Waiver of Jury Trial for Cause No. 845069, Docket Entry No. 14-20, p. 32.

[12]See Transcript of Sentencing Hearing, Docket Entry No. 14-26, pp. 76-77.

robbery on February 14, 2002.[13]   The Texas Court of Criminal Appeals
refused Montgomery's PDR on July 31, 2002.[14]

## C.    Federal Habeas Petition

Montgomery filed the Petition on July 30, 2024, challenging
his conviction for capital murder and his six convictions for
aggravated robbery.[15]     Montgomery brings claims of judicial
misconduct, prosecutorial misconduct, ineffective assistance of
counsel, and fraud and concealment.[16]

The respondent argues that the Petition must be dismissed
because it is untimely and barred by the governing one-year statute
of limitations on federal habeas corpus review.[17]   Montgomery has
filed Petitioner's Response[18] and a motion titled "Motion for
Certificate of Appealability (C.O.A.) for the Denial of 28 U.S.C.
[§] 2254 Writ of Habeas Corpus."[19]

---

[13]See Docket Entry No. 14-29, p. 28; Montgomery v. State,
Nos. 14-01-00414-CR, 14-01-00415-CR, 14-01-00416-CR, 14-01-00417-
CR, 14-01-00418-CR, 14-01-00419-CR; 2002 WL 220638 (Tex. App.–
Houston [14th Dist.], Feb. 14, 2002, pet. refused).

[14]See Montgomery v. State, No. PD-0490-02 (Tex. Crim. App.
July 31, 2002).

[15]See Petition, Docket Entry No. 1.  The petitioner's pro se
submissions are ordinarily treated as filed on the date he placed
them in the prison mail system under the prison mailbox rule.  See
Medley v. Thaler, 660 F.3d 833, 835 (5th Cir. 2011).

[16]See Petition, Docket Entry No. 1, pp. 6-7, 11-20.

[17]Respondent's Answer, Docket Entry No. 15.

[18]Docket Entry No. 16.

[19]Docket Entry No. 17.

## II.  Discussion

## A.    The One-Year Statute of Limitations

According to the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), Montgomery's Petition is subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which runs from the latest of -

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Montgomery filed a direct appeal of his capital murder conviction and sentence.  The direct appeal was pending until December 12, 2002, when the state appeals court affirmed the judgment of the trial court.  The Texas Court of Criminal Appeals refused his PDR on September 3, 2003.  Montgomery's conviction became final on December 2, 2003, 90 days after the Texas Court of Criminal Appeals refused his PDR.  See Gonzalez v. Thaler, 132 S. Ct. 641, 653-54 (2012) (explaining that a judgment becomes final

for purposes of 28 U.S.C. § 2244(d)(1)(A) "when the time for pursuing direct review in [the Supreme] Court, or in state court, expires"); Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (citations omitted) ("[T]he 'conclusion of direct review' is when the Supreme Court either rejects the petition for certiorari or rules on its merits.  If the conviction does not become final by the conclusion of direct review, it becomes final by 'the expiration of the time for seeking such review[,]'. . . [which] includes the ninety days allowed for a petition to the Supreme Court following the entry of judgment by the state court of last resort.").  Absent any tolling, the deadline for Montgomery to file a timely federal habeas petition challenging his state court conviction was one year later, on December 2, 2004.

Montgomery filed a direct appeal of his six aggravated robbery convictions.  The state appeals court affirmed the six convictions for aggravated robbery on February 14, 2002, and the Texas Court of Criminal Appeals refused Montgomery's PDR on July 31, 2002. Montgomery's six aggravated robbery convictions therefore became final on October 29, 2002, 90 days after the Texas Court of Criminal Appeals refused his PDR.  See Gonzalez, 132 S. Ct. at 653-54; Roberts, 319 F.3d at 694.  Absent any tolling, the deadline for Montgomery to file a timely federal habeas petition challenging his six state court convictions for aggravated robbery was October 29, 2003.

The federal Petition filed by Montgomery on July 30, 2024, challenging his capital murder conviction and six aggravated

-7-

robbery convictions, is late by almost two decades and is therefore barred by the statute of limitations unless a statutory or equitable exception applies.

**B.     Montgomery Is Not Entitled to Statutory Tolling**

Under 28 U.S.C. § 2244(d)(2), the time during which a "properly filed application for State post-conviction or other collateral review" is pending shall not count toward the limitations period on federal habeas review.  The state habeas application challenging his capital murder conviction that was executed by Montgomery on August 29, 2023, and denied by the Texas Court of Criminal Appeals on December 13, 2023, does not afford any tolling under § 2244(d)(2) because it was filed well after the statute of limitations expired on December 2, 2004.  See Richards v. Thaler, 710 F.3d 573, 576 (5th Cir. 2013) ("Where the applicant files his or her state post-conviction petition after the time for filing a § 2254 application has lapsed, the state petition does not operate to toll the one-year limitations period.") (citing Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000)).

Montgomery does not demonstrate that there is any other basis to toll the limitations period.  He does not assert that he was subject to state action that impeded him from filing his Petition in a timely manner.  See 28 U.S.C. § 2244(d)(1)(B).  None of his claims are based on a constitutional right that has been newly recognized by the Supreme Court and made retroactive to cases on collateral review.  See 28 U.S.C. § 2244(d)(1)(C).  Moreover, none

-8-

of his claims raise a constitutional issue that is based on a new "factual predicate" that could not have been discovered previously if the petitioner had acted with due diligence.  See 28 U.S.C. § 2244(d)(1)(D).

## C.    Montgomery Is Not Entitled To Equitable Tolling

The one-year AEDPA limitations period is also subject to equitable tolling.  Holland v. Florida, 130 S. Ct. 2549, 2560 (2010).  Equitable tolling, however, "is only available in 'rare and exceptional circumstances.'"  Clark v. Davis, 850 F.3d 770, 784 (5th Cir. 2017) (quoting Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)).  Equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."  Sutton v. Cain, 722 F.3d 312, 317 (5th Cir. 2013) (quoting Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002)). "'To be entitled to equitable tolling, [the petitioner] must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  Howland v. Quarterman, 507 F.3d 840, 845 (5th Cir. 2007) (quoting Lawrence v. Florida, 127 S. Ct. 1079, 1085 (2007)); accord Holland, 130 S. Ct. at 2560.  "[T]he circumstances of a case must be 'extraordinary' before equitable tolling can be applied" and this determination is "made on a case-by-case basis." Holland, 130 S. Ct. at 2563, 2564.  Moreover, "[e]quity is not intended for those who sleep on their rights."  Mathis v. Thaler,

616 F.3d 461, 474 (5th Cir. 2010) (quoting <u>In re Wilson,</u> 442 F.3d 872, 875 (5th Cir. 2006)).  While the petitioner bears the burden of establishing that equitable tolling is warranted, the decision of whether to invoke equitable tolling is left to the discretion of the district court.  <u>See Cousin v. Lensing,</u> 310 F.3d 843, 848 (5th Cir. 2002).

In Petitioner's Response, Montgomery appears to argue that he is entitled to equitable tolling because his attorney abandoned him and he is mentally ill and incompetent.[20]

1.    <u>Attorney Abandonment</u>

Broadly construed, Montgomery alleges that he is entitled to equitable tolling because the attorney who was working on his state appeal, Pamela Williams, abandoned him and refused to give him his state court records.  Montgomery alleges that Ms. Williams was paid $30,000 to "file motions and to the appeals court and Supreme Court."[21]    Montgomery alleges that despite reaching out to Ms. Williams, she refused to answer his letters and requests for the return of documents related to his state court case.[22]    He states that in 2013 his family "tracked down" Ms. Williams, wherein Montgomery requested that she return his documents and records.[23]

---

[20]<u>See generally</u> Petitioner's Response, Docket Entry No. 16.

[21]<u>Id.</u> at 4.

[22]<u>Id.</u>

[23]<u>Id.</u> at 4-5.

She refused.[24]    In June of 2022 Montgomery called Ms. Williams,
again requesting the return of his legal documents.[25]    She refused
to comply with his request.[26]

Attached   to   Petitioner's   Response   are   several   letters
Ms. Williams sent to Montgomery.   In one letter dated May of 2001,
Ms. Williams  informed  Montgomery  that  she  has  changed  office
locations.[27]    A  couple  of  months  later,  in  December  of  2001,
Ms. Williams writes to Montgomery that she is enclosing a brief
that she submitted in his case.[28]    In April of 2002 Ms. Williams
states that she is enclosing a copy of the PDR that was filed with
the Texas Court of Criminal Appeals.[29]    In the four other letters
Montgomery attaches from Ms. Williams — dated August of 2002, July
of 2003, June of 2005, and August of 2006 — Ms. Williams tells
Montgomery that she is still working on his case.[30]

Abandonment  by  counsel  can  support  tolling  the  statute  of
limitations.   See North v. Davis, 800 F. App'x 211, 216 (5th Cir.
2020)  (per  curiam)  (citing  Maples  v.  Thomas,  132  S.  Ct.  912

---

[24]Id. at 5.

[25]Id.

[26]Id.

[27]Letter from Pamela B. Williams to Michael Montgomery, Exhibit
to Petitioner's Response, Docket Entry No. 16, p. 22.

[28]Id. at 21.

[29]Id. at 23.

[30]See id. at 24-27.

-11-


(2012)).  "In the cases in which the Supreme Court has recognized that attorney abandonment may result in equitable tolling, the movant's attorney 'failed to communicate with [the movant] over a period of years' or did not in fact represent the movant in any capacity whatsoever during the movant's period for filing an appeal, even though the attorney failed to file a motion to withdraw."  United States v. Wheaten, 826 F.3d 843, 852 (5th Cir. 2016) (citing Maples, 132 S. Ct. at 923-24 and Holland, 130 S. Ct. at 2549).

Here, the letters Montgomery has attached to Petitioner's Reply show that Ms. Williams was communicating with him during the period of time that his PDR was pending before the Texas Court of Criminal Appeals.[31]  In a letter dated August of 2006 Ms. Williams told Montgomery she was still working on his case.[32]  Montgomery apparently did not hear from Ms. Williams again until 2013 when his family "tracked [her] down."[33]

Montgomery fails to demonstrate that he was abandoned as to the filing of a federal habeas petition.  He does not allege — and the record before the court does not support — that Ms. Williams was hired to file a federal habeas petition on behalf of the

---

[31]Montgomery does not state for which matter Ms. Williams was hired to represent him — the murder conviction or the convictions for aggravated robbery.

[32]See Letter from Pamela B. Williams to Michael Montgomery, Exhibit to Petitioner's Response, Docket Entry No. 16, p. 27.

[33]Petitioner's Response, Docket Entry No. 16, pp. 4-5.

petitioner.    To the contrary, all of Montgomery's allegations concern Ms. Williams' representation of him during his state appeal.[34]  Montgomery has failed to prove that he was abandoned by Ms. Williams in this regard.  See Arredondo-Braaten v. Lumpkin, No. Civil No. SA-24-CA-0084-FB, 2024 WL 3642197, at *3 (W.D. Tex. Aug. 1, 2024) (finding that the petitioner failed to demonstrate that he was abandoned by his attorney when the record showed that "counsel was never hired to handle [the] petitioner's § 2254 petition in the first place" and that "any neglect on the part of his former counsel in responding to inquiries does not establish extraordinary circumstances warranting equitable tolling").

Even assuming that Ms. Williams' conduct was so grievous as to amount to an extraordinary circumstance that prevented timely filing of his federal habeas petition, Montgomery has not shown that he was pursuing his rights diligently in the interim.  See Tallant v. Smith, No. 1:22CV192-MPM-JMV, 2023 WL 3730308, at *9 (N.D. Miss. May 30, 2023) ("A legitimate claim of attorney abandonment can qualify as an extraordinary circumstance for equitable tolling purposes, but does not, by itself, excuse the petitioner from his duty of diligence.  Due diligence in pursuit of a petitioner's remedies is a requirement independent of any attorney's efforts.") (citing Manning v. Epps, 688 F.3d 177, 189

---

[34]See, e.g., id. at 4 (stating that Ms. Williams was contracted "to file motions to the appeals court and Supreme Court") and at 8 (stating that attorneys who were retained to represent him during his appeal and before the Supreme Court abandoned him).

n.2 (5th Cir. 2012) and <u>Palacios v. Stephens,</u> 723 F.3d 600, 605

(5th Cir. 2013) (internal quotation marks omitted).  A petitioner

must have "acted with reasonable diligence throughout the period he

seeks to toll."  <u>Smith v. McGinnis,</u> 208 F.3d 13, 17 (2d Cir. 2000)

(citing <u>Johnson v. Nyack Hospital,</u> 86 F.3d 8, 12 (2d Cir. 1996)).

Montgomery did not file the federal Petition challenging his

murder conviction and aggravated robbery convictions until July 30,

2024, which was almost 20 years after the convictions became final.

Aside from attempting to contact Ms. Williams two times,[35]

Montgomery does not allege that he took any further action in an

attempt to check on the status of his state case or to file a

federal habeas petition.  This two-decades-long delay does not show

diligence on the part of Montgomery.  <u>See, e.g., Manning,</u> 688 F.3d

at 185-86 (finding that the petitioner was not entitled to

equitable tolling when, despite having appointed counsel, the

petitioner did "nothing to further his legal claims" for 19 months

and commenting that "[c]omplete inactivity in the face of no

communication from counsel does not constitute diligence"); <u>Arita</u>

<u>v. Cain,</u> 500 F. App'x 352, 354 (5th Cir. 2012) (holding that

equitable tolling was not warranted when the petitioner never

instructed counsel to file a federal habeas petition and, despite

his attorney's lack of communication, the petitioner did not

---

[35]After Ms. Williams sent the letter to Montgomery in August
of 2006, Montgomery states that he and his family attempted to
contact Ms. Williams two other times:  once in 2013 and again in
2022.  <u>See</u> Petitioner's Response, Docket Entry No. 16, pp. 4-5.

exercise diligence in pursuing his rights); <u>Jacobs v. United States,</u>
Crim. No. 6:12cr33-2, 2019 WL 2343800, at \*9 (E.D. Tex. Mar. 26,
2019) (denying the application of equitable tolling and finding
that the petitioner did not exercise reasonable diligence when the
petitioner's attorney "began refusing calls from him in March of
2014" and then the petitioner waited 2.5 years before contacting
the Clerk about whether a habeas petition had been filed), <u>report
and recommendation adopted,</u> Crim. No. 6:12cr33(2), 2019 WL 2330050
(E.D. Tex. May 30, 2019); <u>Palacios,</u> 723 F.3d at 607 (finding that
"petitioners seeking to establish due diligence must exercise
diligence even when they receive inadequate legal representation").
Because Montgomery has not shown that he has been pursuing his
rights diligently or that some extraordinary circumstance stood in
his way that prevented the timely filing of his Petition, he is not
entitled to equitable tolling of the statute of limitations due to
the alleged abandonment of his attorney.[36]

---

[36]To the extent Montgomery is arguing that he is entitled to
the tolling of the limitations period because he did not have
access to his state court records, such circumstance is not a rare
and exceptional circumstance that warrants equitable tolling. <u>See,
e.g.,</u> <u>Tiner v. Treon,</u> 232 F.3d 210, 2000 WL 1273384, at \*1 (5th
Cir. 2000) (per curiam) (denying application of equitable tolling
where petitioner's allegations that his attorney would not provide
him a copy of his state records did "not constitute rare and
exceptional circumstances warranting equitable tolling"); <u>Brown v.
Dretke,</u> No. 3:02-CV-1186-R, 2004 WL 60266, at \*2 (N.D. Tex. Jan. 7,
2004) (finding that petitioner was not entitled to equitable
tolling and explaining that "[u]nfamiliarity with the legal
process, difficulty in obtaining records, lack of money to pay for
copies, and transfers between prison units are common problems
among inmates who are trying to file a petition for writ of habeas
corpus"); <u>Kiser v. Dretke,</u> No. Civ.A. 4:04-CV-0494, 2004
(continued...)

2.    Mental Incompetence

Construing Petitioner's Response liberally, Montgomery appears to allege that he is entitled to equitable tolling because he is mentally ill and incompetent.[37]

Although the Fifth Circuit has recognized that "mental incompetency might support equitable tolling of a limitation period[,]" Fisher v. Johnson, 174 F.3d 710, 715 (5th Cir. 1999) (citing Hood v. Sears, Roebuck & Co., 168 F.3d 231, 232-33 (5th Cir. 1999)), it has "also made clear that a claim of incompetence does not automatically entitle a prisoner to equitable tolling." Smith v. Johnson, 247 F.3d 240, 2001 WL 43520, at *3 (5th Cir. 2001) (per curiam).   For a petitioner's mental incompetence or mental illness to warrant equitable tolling, "a petitioner (i) must make a threshold showing of incompetence and (ii) must show that this incompetence affected his ability to file a timely habeas petition."   Jones v. Stephens, 541 F. App'x 499, 505 (5th Cir. 2013) (per curiam).

---

[36] (...continued)
WL 2331592, at *2 (N.D. Tex. Oct. 15, 2004) ("Difficulty obtaining records and lack of money to pay for copies are common problems among inmates who are trying to pursue post-conviction habeas relief and, thus, do not present exceptional circumstances that warrant equitable tolling.") (citations omitted), findings, conclusions, and recommendation adopted, No. Civ.A. 404CV494Y, 2004 WL 2549174 (N.D. Tex. Nov. 9, 2004).   This is especially true here where Montgomery fails to state what evidence or material from his trial transcript or state court records were required to file a state court post-conviction application or his federal habeas petition.

[37]See Petitioner's Response, Docket Entry No. 16, pp. 4, 5, 6.

Case 4:24-cv-02951     Document 18     Filed on 02/06/25 in TXSD     Page 17 of 18

Montgomery makes no argument in support of his claim that mental incompetence or mental illness affected his ability to timely file a federal habeas petition.  He does not allege that he has been diagnosed with any particular mental illness or that he has been found to be incompetent.  He does not explain how any alleged incompetence or mental illness hindered his ability to timely file a habeas petition.  In short, Montgomery's conclusory claim fails to show that mental incompetence or mental illness affected his ability to timely file a habeas petition.

Because Montgomery has not articulated a valid basis for tolling the statute of limitations, the court concludes that this action must be dismissed as untimely filed.

## III.  **Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2569 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)).  Where denial of relief is based on procedural grounds, the petitioner must show not

-17-

only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S. Ct. at 1604. Because this court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct, a certificate of appealability will not issue.

## IV.  Conclusion and Order

Accordingly, the court **ORDERS** as follows:

1.  The Petition for a Writ of Habeas Corpus By a Person in State Custody filed by Michael Lee Montgomery (Docket Entry No. 1) is **DISMISSED WITH PREJUDICE.**

2.  The Motion for Rule Sixty 60(B) Fraud and Concealment Perpetrated Upon the Courts, Jurisdiction Subject Matter, Tolls Statute of Limitation (Docket Entry No. 16) is **DENIED.**

3.  The Motion for Certificate of Appealability (C.O.A.) for the Denial of 28 U.S.C. [§] 2254 Writ of Habeas Corpus (Docket Entry No. 17) is **DENIED.**

4.  A certificate of appealability is **DENIED.**

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 6th day of February, 2025.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-18-